I guess there's three main issues in this case. Two of them deal with step four of the sequential evaluation, one regarding the treating physician's opinions and one is Mr. Tommasetti's pain testimony, which impacts his residual functional capacity assessment. But assuming the sufficiency of the ALJ's residual functional capacity assessment, we believe that the finding of disability is warranted. And that's based on a couple of decisions that this Court has made since the Matt Strait judge's decision. Subsequent to that time, one of them is regarding the DOT. As the ALJ said in her decision, that Mr. Tommasetti is capable of performing a sedentary range of work. And the past relevant work that the vocational expert identified is identified as light exertion by the DOT, which is in excess of what he can do. And so, of course, the DOT doesn't trump, but neither does the VE. And so, in this case, the question is... And if the ALJ had found for you at step four, then you would have gone to step five, right? But the ALJ found against you, but still went to step five anyway, right? Yes. So we really have to say, okay, at step five, what was the problem? At step five, the VE identified one occupation and the judge said that this is a significant range of work, but of course... So you're arguing Lounsbury at step five, right? At step five, yes, that the identification of one semi-skilled occupation is not a significant range of work as this Court in Lounsbury had held. Now, Lounsbury, though, is light exertion. Yes. And so you're asking for an extension to Lounsbury to sedentary, right? Yes, it is, but it's the same words used in both regulations as to what constitutes significant range within light work and what constitutes significant range within sedentary. And realistically, it actually... Tomasetti is worse off than Lounsbury because in Lounsbury, the person can do one semi-skilled work in addition to being able to do these untold unskilled light occupational jobs, which is 1,600 unskilled occupations as set forth by the regulations, as to where Tomasetti, the base that is available to him is only 200 occupations plus that one semi-skilled occupation. So he's worse off than Lounsbury. And so it would seem really inconsistent to say that this one occupation in Lounsbury is not enough, but that it is somehow enough in Mr. Tomasetti's situation. Well, if we did apply Lounsbury to step five with sedentary, which would be... Why wouldn't the remedy to go back and have the step five expanded, as opposed to your saying that he should just prevail, right? Yes, as was the same remedy in Lounsbury, saying that that one occupation was not indicative of a significant range, and so that there really was no more need to... But Lounsbury hadn't been decided when this case was heard, right? Isn't Lounsbury after? The magistrate judge issued his decision, and then Lounsbury decided this case, or that case, almost immediately thereafter. And so it was properly briefed in the briefs. But the ALJ certainly didn't have the benefit of it. Yes. That did predate it. But it was clarification by this Court that does – it just, in our view, it changes the outlook of this case, because it is still controlling, even in those cases. It does – the Commissioner has done this before, where the Commissioner, for example, in the obesity rulings, has said, we've now issued this ruling and that we're also going to apply it to all the cases that are pending. And so if the Commissioner likes to look at it that way, I can't see that this Court Of course, I mean, it's a different, you know, a different setting and a different – well, it's obviously different, but that rationale would appear to be the same. But going back to the past relevant work, I just wanted to highlight just a couple of points about that, is that the ALJ has to articulate a reason for deviating from the DOT. And in Johnson v. Shalala, there was a reason to deviate from the DOT. The V.E. was looking at these local jobs as distinguished from the way – But that's – we're at Step 4 again, right? Yes. Okay, if we assume error at Step 4, but you go to Step 5 anyway, how are you prejudiced? If we go to Step 5, how are we – Well, because didn't the – because normally, if it would have ended at Step 4, but the ALJ sort of did an alternative thing there, right? The ALJ said, well, okay, I'm doing this, but then I'm still going to go to Step 5 anyway, right? Right. So I just wanted to be able to get over that Step 4 hurdle with some – I'd like to be a little reassured in myself that the Step 4 finding, I mean, the way I see it, it was – Well, we found it to be error, but we found it to be harmless error because the Step 5 was done. That is what my position would be, is that it is not harmless because the alternative finding is not sufficient to make it harmless. Because the ALJ only identified one occupation, that runs – that is contrary to Lounsbury. So because there is that – because it's inconsistent with this Court's holding, the identification of one occupation would not be harmless error. And that's the path that the magistrate judge took in his decision. The magistrate judge said, well, I'm not sure about this House Velvet Work issue, but I think it's harmless error because of this one occupation at Step 5. But again, that was before Lounsbury, when this Court clarified that the identification of one semi-skilled occupation is insufficient to carry the Commissioner's burden, which is really the only basis in which the ALJ found in finding him not disabled at Step 5. What's the problem with the treating physician? The treating physician indicated that Mr. Tomasetti could not do full-time work, which is consistent with disability. And so at the hearing, the medical expert that the ALJ called upon said, well, I've looked at Dr. Knockenberg's opinions, and I find no reason to really deviate from it. Now, he did add some clarifications, and the ALJ did jump on it, but it does seem that, you know, when you have the ALJ's own doctor basically ratifying the opinions as set forth by the treating doctor, it just seems that the ALJ then went, you know, bent over backwards to try to undermine that. And the reasons set forth, as set forth in the briefings, are reasons. I mean, even though the ALJ does set forth reasons, we believe that, you know, they still have to be specific and legitimate. And as the brief points out, where it's... We're talking about Dr. Knockenberg, is that correct? Yes, Knockenberg is the treating doctor, and... 1209-97, she doesn't say he's disabled. She seems to be backing off of that. She says the patient continues to state he's disabled. I haven't seen any significant change. So that's a very weak read to hang your hat on, isn't it? Well, what happened is... She released him to go to work at one point, and she says, I haven't seen any change over the years. Yes, what happened is that in 1994, when he was originally hurt, he did actually go back to work for a short period of time, but he fell on the ladder, as the record indicates. And it was based on that accident that exacerbated his current or his existing condition. And then Dr. Knockenberg, during that period of time, in 1997, though, she did set forth opinions in an assessment form, which is contained in the record, that indicates that he does have significant restrictions that prevents him from being able to work. And she also did it on actually a couple of different occasions. One in 1998, which indicates he's Mr. Thomas said he does not have the ability to perform full-time work. And another time in 1997, which she also indicated that he is incapable of performing work. So although the 1997 report doesn't specify it clearly, some of these reports aren't designed to give out restrictions. They're basically designed to set forth, you know, the objective findings and the diagnosis and what his plans are. And in that report, she indicated, I do not expect him to recover significantly. And it was only when they were asking her to clarify in terms of Social Security terms what he can and cannot do, she did affirm that he lacks the ability to perform full-time work. And so that is what the medical expert at the hearing appeared to accept, that he lacks the capacity to do full-time work. So in other words, there was clarification subsequent to that report that – and also, the medical expert really did not quarrel with the fact that Dr. Machenberg was inconsistent or that she was not a valid source. Quite to the contrary, he did indicate she is a credible medical source. I defer – and I'm paraphrasing a bit, but that I do defer to Dr. Machenberg's opinions. And so based on his opinions that were asked for her finding a disability, based on the Commission's own rules, I think I've run out of time. Thank you. Good morning, Your Honors. Good morning. I'm Gerilyn Dulceth for the Commissioner of Social Security. I just wanted to make a couple of points that the ALJ probably found that the claimant did not meet his burden of showing that he could not return to less physically strenuous past work that he had performed in the past. As an electronics technician or assembler. Step four, I see as a little bit – if I were to identify a weakness in your position, it would be at step four. And the ALJ seems to recognize that by doing it in the alternative, it isn't really the strongest holding on step four. And so what's the persuasive evidence in the record that supports the VE's testimony on which the ALJ relied to deviate from the DOT definitions at step four? When the VE was asked about whether the claimant could perform his past work as an electronics technician, as he actually performed it, there was some questioning of the claimant. And he said that basically he worked at a, you know, kind of a workstation, and he stood and had a, you know, stood and sat. But he lifted 10 to 15 pounds maybe, which did exceed the RFC the ALJ found. And the ALJ was asking the VE, well, are we talking about now electronics assembly jobs as they're ordinarily performed in the national economy? And counsel was questioning the VE on the point about, well, in the Dictionary of Occupational Titles, that electronic assembly job is defined as light. But this claimant cannot lift up to 20 pounds, which is normally required in light work. However, he can stand, walk, and sit for six hours at a time each, which light work also requires. And on that issue, counsel was asking the VE about why the DOT would identify this job as light. First of all, the VE testified to transcript page 256, and this was the discussion between the ALJ and the vocational expert. So as he performed it, there might be a problem with the weight, yes, but certainly as it's typically performed. And the VE responds, I would say that there is, would be a significant number of those jobs. When counsel was later questioning him about the deviation from the DOT on page, transcript page 259, he said, well, in what way is it classified as light work? And the VE said, the counsel asked him, you know, is lifting more than 10 pounds required in this job as is generally performed? VE responds, I would say no. There is probably more the standing, the standing sitting option. This is significant because light work can require more than two hours of standing and walking. Sedentary work sort of maxes out at two hours of standing and walking. So I think the VE's point there is that the DOT probably describes some of these jobs as light, because some of them require more than two hours of standing and walking a day, which this claimant is capable of. So that would be the testimony on transcript page 259 that supports the past relevant work finding, that there are jobs. But even the ALJ knows it's not very strong. That's why the ALJ goes to Step 5, right? Right. But the Step 5 finding is equally supported by substantial evidence and legally proper under the medical vocational rules. It's only plaintiff's attorney that's assuming that Lounsbery, you know, directs the finding in this case. The applicable rule in this case was whether the claimant had transferable work skills that could transfer to similar jobs with little vocational adjustment.  And he had similar skills that he could take to the semiconductor assembler job. So that was satisfied. And even if you were looking at this case from a Step 5 perspective, the VE's testimony supports that there were significant numbers of these similar electronics assembly jobs this gentleman could perform. This was a job that he apparently performed, I think, 12 or 13 years. And he testified himself, we made everything the government wanted, you know, in all sorts of electronics. So he had a background in this work, and the VE identified significant numbers of jobs that he could perform. So if Lounsbery applies to sedentary work, do you still prevail? I believe so, because of the testimony on page 256 of the transcript. The ALJ, again, was questioning the vocational expert about electronics assembly jobs in the national economy, and the VE was saying, yes, there would be significant numbers of those jobs, within the claimant's residual functional capacity. So I would submit that electronics assembly jobs exist in significant numbers, and there are different types of occupations. Those jobs, plus the semiconductor assembler jobs, would constitute, you know, what would satisfy Lounsbery. And Lounsbery, I think the transferable work skills in that case were, it didn't seem they were that impressive. I think the transferable job that the VE identified was caregiver or in-home support person. In stark contrast, you know, claimant has extensive skills in the electronics industry. I just wanted to make a point. When Judge Trout was asking about Dr. Nackenberg, it's true the claimant originally injured himself in an automobile accident in April of 1994. His symptoms pretty much resolved, and then he re-injured himself in December of 1994. It was only in, I believe, early 95 that he saw Dr. Nackenberg, and after she prescribed some medication, it was May of 95 that she released him back to work. So it was subsequent to that second allegedly aggravating injury. Other than that, I think the substantial evidence certainly supports the ALJ's reasonable finding that this skilled worker could perform less strenuous work despite his back injury. Are there any other questions? Looks like we have 14 seconds left. Do you have anything further you want to offer by way of rebuttal, or is that 14 seconds deficit? It may be. I'll just rest. Appreciate that. We thank both counsel for their argument. The case just argued is submitted. Thank you.
judges: Trott, Clifton, Callahan